**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. 1:22-cv-01600 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| BIODELIVERY SCIENCES | : **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| INTERNATIONAL, INC., PETER S. | : **THE SECURITIES EXCHANGE ACT** |
| GREENLEAF, JEFFREY A. BAILEY, TODD | : **OF 1934** |
| C. DAVIS, KEVIN KOTLER, VANILA M. | : |
| SINGH, M.D., MAMC, MARK A. SIRGO, | : **JURY TRIAL DEMANDED** |
| PHARM.D, and WILLIAM MARK | : |
| WATSON, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against BioDelivery Sciences International, Inc. ("BioDelivery or the "Company") and the members BioDelivery board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of BioDelivery by affiliates of Collegium Pharmaceuticals, Inc. ("Collegium").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on February 18, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Bristol Acquisition Company Inc., a wholly owned subsidiary of Collegium ("Merger Sub"), will merge with and into BioDelivery, with BioDelivery continuing as the surviving corporation and become a wholly-owned by Collegium (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated February 14, 2022 (the "Merger Agreement"), each BioDelivery common share issued and outstanding will be converted into the right to receive: $5.60 in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub commenced a tender offer to acquire all of BioDelivery's outstanding common stock and will expire on March 18, 2022 (the "Tender Offer").

3.      Defendants have now asked BioDelivery's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) BioDelivery's financial projections relied upon by the Company's financial advisor, Moelis & Company LLC ("Moelis & Company") in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the financial advisors. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as BioDelivery stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to BioDelivery's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of BioDelivery common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Peter S. Greenleaf has served as a member of the Board since May 2018 and is the Chairman of the Board.

11. Individual Defendant Jeffrey A. Bailey has served as a member of the Board since November 2020 and is the Chief Executive Officer of the Company.

12. Individual Defendant Todd C. Davis has served as a member of the Board since May 2018.

13. Individual Defendant Kevin Kotler has served as a member of the Board since May 2018.

14. Individual Defendant Vanila M. Singh, M.D., MAMC has been a member of the Board since November 2019.

15. Individual Defendant Mark A. Sirgo, Pharm.D has served as a member of the Board since August 2005.

16. Individual Defendant William Mark Watson has served as member of the Board since September 2020.

17. Individual Defendant Renee Tannenbaum has served as a member of the Board since December 2017.

18. Defendant BioDelivery is incorporated in Delaware and maintains its principal offices at 4131 ParkLake Avenue, Suite 225, Raleigh, North Carolina 27612. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "BDSI."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.   **The Proposed Transaction**

21.   BioDelivery, a specialty pharmaceutical company, engages in the development and commercialization of pharmaceutical products for chronic conditions in the United States and internationally. The Company provides its products based on its patented BioErodible MucoAdhesive drug-delivery technology, a small erodible polymer film for application to the buccal mucosa, as well as other drug-delivery technologies. It offers BELBUCA, a buprenorphine buccal film for the treatment of chronic pain; BUNAVAIL, a buprenorphine and naloxone buccal film to treat opioid dependence; and ONSOLIS, a fentanyl buccal soluble film for the management of breakthrough pain in cancer patients. The company also offers Symproic, a peripherally acting mu-opioid receptor antagonist for the treatment of opioid-induced constipation in adult patients with chronic non-cancer pain, including patients with chronic pain related to prior cancer or its treatment who do not require frequent opioid dosage escalation. BioDelivery was incorporated in 1997 and is headquartered in Raleigh, North Carolina.

22.   On February 14, 2022, BioDelivery and Collegium announced the Proposed Transaction:

> STOUGHTON, Mass. and RALEIGH, N.C., Feb. 14, 2022 (GLOBE NEWSWIRE) -- Collegium Pharmaceutical, Inc. (Nasdaq: COLL) and BioDelivery Sciences International, Inc. (NASDAQ: BDSI) today announced a definitive agreement pursuant to which Collegium will acquire BDSI for $5.60 per share in cash.
>
> BDSI has a portfolio of pain and neurology products that address serious and debilitating conditions. BDSI's commercial growth driver, BELBUCA, is a meaningfully differentiated schedule III opioid product and is highly complementary to Collegium's portfolio of pain products. Additional products in the BDSI portfolio include Symproic®, a contributor, and ELYXYB, a neurology product in its early launch phase.

"We are excited to announce this acquisition, which represents a major step forward in our mission to build a leading, diversified specialty pharmaceutical company committed to improving the lives of people suffering from serious medical conditions," said Joe Ciaffoni, President and Chief Executive Officer of Collegium. "The BDSI portfolio expands and enhances Collegium's differentiated pain offerings and establishes a foothold in neurology, a strategic market adjacency. Importantly, we expect this acquisition will be immediately and highly accretive by expanding our revenue scale and generating significant synergies."

"We are pleased to announce the transaction with Collegium, which we view as a testament to the attractiveness of our portfolio and long-term value of our brands," said Jeff Bailey, Chief Executive Officer of BDSI. "Our team has worked diligently to grow our differentiated products. We believe that this transaction will deliver benefits to patients and prescribers and create significant value for our shareholders."

**Transaction Rationale**

- Strategically aligned with Collegium's mission to build a leading, diversified specialty pharmaceutical company committed to improving the lives of people suffering from serious medical conditions

- Diversifies and expands Collegium's revenues by adding BELBUCA as a second and highly complementary growth driver to Collegium's highly differentiated pain portfolio, in addition to a contributor with Symproic, and a new product launch opportunity with ELYXYB

- Further strengthens Collegium's financial position through increased revenue scale, immediate and significant earnings accretion, and accelerated cash flow generation, driven by identified annual run rate synergies of at least $75 million expected to be achieved within twelve months post-closing

- ELYXYB provides entry into the neurology market, a strategic market adjacency previously identified by Collegium

**Additional Transaction Details**

- Under the terms of the definitive agreement, Collegium will promptly commence a tender offer to acquire all the outstanding shares of BDSI at the price of $5.60 per share

- The offer price of $5.60 represents a 54% premium to BDSI closing share price of $3.64 as of Friday, February 11, 2022, and implies a fully diluted equity value of approximately $604 million using the treasury stock method

- The all-cash consideration will be funded by a combination of Collegium existing cash on hand and a $650 million secured financing from funds managed by Pharmakon Advisors, LP ("Pharmakon"), with a four-year term, which will bear an interest rate of Libor+750bps and will be amortized over four years

- As part of the transaction, Collegium will repay the existing Collegium term loan from Pharmakon and the existing BDSI term loan from Pharmakon

- Post-closing, we expect Collegium net leverage to be below 3.0x based on estimated fiscal year 2021 pro forma combined EBITDA including run rate synergies

- Collegium expects to achieve annual run rate synergies of at least $75 million, based off of BDSI estimated 2021 operating expenses, within twelve months post-closing

- Collegium expects this transaction to be highly accretive to earnings in 2022 and 2023

**Timing to Close**

The transaction, which has been unanimously approved by the boards of directors of both companies, is expected to close late in the first quarter 2022, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of outstanding shares of BDSI's common stock. Following the successful closing of the tender offer, Collegium will acquire any shares of BDSI that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

**Advisors**

Jefferies LLC is acting as the exclusive financial advisor to Collegium. Moelis & Company LLC is acting as the exclusive financial advisor to BDSI. Troutman Pepper Hamilton Sanders LLP is serving as legal counsel to Collegium. Goodwin Procter LLP is serving as legal counsel to BDSI.

* * *

23. It is therefore imperative that BioDelivery's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

24. On February 18, 2022, BioDelivery filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Company Financial Projections*

25. The Solicitation Statement fails to provide material information concerning financial projections by BioDelivery management and relied upon by the financial advisors in their analyses. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that BioDelivery management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can

8

come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Projections prepared by Company management for BioDelivery for fiscal years 2022 through 2028 and for fiscal years 2022 through 2037 for the ELYXYB product only, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (a) EBIT; and (b) Unlevered Free Cash Flows, but fails to disclose: (i) the line items used to calculate the non-GAAP measures or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G.

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

9

non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Moelis & Company's Financial Analyses*

30. With respect to Moelis & Company's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the estimated terminal values for the Company excluding ELYXYB; (ii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from -35% to -15%; (iii) the NOLs of the Company; (iv) the inputs and assumptions underlying the use of discount rates ranging from 7.00% to 11.25%; (v) BioDelivery's weighted average cost of capital.

31. With respect to Moelis & Company's *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose: (i) the metrics of the transactions observed by Moelis & Company in the analysis, including the upfront TEV and LTM revenue of each company; and (ii) the basis for applying the multiple reference ranges of multiples.

32. With respect to Moelis & Company's *Selected Publicly Traded Companies Analysis*, the Solicitation Statement fails to disclose: (i) the metrics of the companies observed by Moelis & Company in the analysis, i.e., the enterprise value, 2022E Revenue, and 2022E EBITDA;

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

(ii) the basis for selecting (a) a reference range for EV/2022E Revenue multiples for the Company of 1.6x to 2.5x and (b) a reference range of EB/2022E EBITDA multiples for the Company of 6.5x to 8.5x; and (iii) the closing price per share as of January 18, 2022.

33.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender his shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

36.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

38. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

39. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

40. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

41. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

42. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

43. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

44. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

45. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

46. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

47. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of BioDelivery within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of BioDelivery, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of BioDelivery, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of BioDelivery, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

52. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B.       Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.       Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: February 25, 2022              **MELWANI & CHAN LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas
New York, New York 10036
Tel: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*